IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES E. COOKE, JR.,

    Plaintiff,

v.

PERRY PHELPS, solely in his
official capacity as Commissioner of
the Delaware Department of
Corrections and DANA
METZGER, solely in his official
capacity as Warden of the James T.
Vaughn Correctional
Center,

    Defendant.

Civil Action No. 17-cv-00781-CFC

---

Christopher C. Popper, FOX ROTHSCHILD LLP, Exton, Pennsylvania; Jeffrey M. Pollock, FOX ROTHSCHILD LLP, Lawrenceville, New Jersey; Steven J. Daroci, FOX ROTHSCHILD LLP, Lawrenceville, New Jersey.

*Counsel for Plaintiff*

Carla A.K. Jarosz, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware

*Counsel for Defendants*

**MEMORANDUM OPINION**

November 25, 2019
Wilmington, Delaware

$$\underline{\phantom{xxxxxx}\text{Colm F. Connolly}\phantom{xxxxxx}}$$
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff James Cooke Jr. is an inmate at the James T. Vaughn Correctional Center (JTVCC). Due to injuries he suffered as a toddler, Cooke has chronic issues with his feet. He has sued Defendants in their official capacities for violating the Eighth Amendment of the United States Constitution and Article One, Section Eleven of the Delaware Constitution. Cooke's claim is that Defendants have denied him medical treatment for his feet. Defendants have moved to dismiss Cooke's complaint for failure to state a claim upon which relief can be granted.

## I. BACKGROUND[1]

Cooke was sentenced to death in 2007 and has been incarcerated at the JTVCC ever since. D.I. 1 ¶ 4. When Cooke was a toddler, he suffered severe burns to both his feet. D.I. 1 ¶ 11. Shortly thereafter he was treated at the Children's Hospital of Philadelphia with multiple "split-thickness skin graft" procedures. D.I. 1 ¶ 12–14. These procedures were largely successful. D.I. 1 ¶ 15. Although he continued to treat his burns with ointment, Cooke was able to walk without significant issues throughout his childhood and teenage years. D.I. 1 ¶ 16.

---

[1] In considering Defendants' motion, I accept as true all factual allegations in the complaint and view those facts in the light most favorable to Cooke. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

When Cooke entered the Delaware prison system in 2005, he was provided with treatment for his feet. D.I. 1 ¶ 19. From 2005 until 2014 he found this treatment satisfactory. D.I. 1 ¶ 26. But in 2014 the new healthcare provider for the JTVCC reduced the frequency with which Cooke received treatment, D.I. 1 ¶ 27, and his orthotic shoes were confiscated without explanation. D.I. 1 ¶ 28. Cooke says he heard rumors "that the decrease in quality of his medical care was intentional and motivated primarily by the ... rationale that [Cooke's] execution was imminent and that caring for [his] serious medical condition was therefore futile." D.I. 1 ¶ 29.[2]

In February 2016 Cooke was transported to see Dr. Jamie Hopkins of Delaware Podiatric Medicine at the Bayhealth Wound Care Center. D.I. 1 ¶ 32. He was in a wheelchair when he saw Dr. Hopkins, and his feet had been deteriorating for about a year. D.I. 1, Ex. 1 ¶ 9. Dr. Hopkins examined Cooke and developed a treatment plan at that appointment. D.I. 1 ¶¶ 34–37. Cooke returned to see Dr. Hopkins twelve more times between February and the end of October for issues related to his feet. D.I. 1, Ex. 1 ¶ 8. These visits included both treatment and examination. D.I. 1 ¶ 38–47.

---

[2] In August 2016, the Delaware Supreme Court held that Delaware's capital sentencing statute scheme is unconstitutional. *Rauf v. State*, 145 A.3d 430 (Del. 2016).

After a series of unsuccessful attempts to resolve Cooke's foot wounds, Dr. Hopkins recommended in September 2016 that Cooke see a plastic surgeon for a split-thickness skin graft. D.I. 1, Ex. 1 ¶ 16. He again made this recommendation in October 2016. D.I. 1 ¶ 51.

In November 2016 Cooke saw a plastic surgeon, Dr. Zabel. D.I. 1 ¶ 52. After meeting with Cooke, Dr. Zabel rejected Dr. Hopkins's recommendation that split-thickness grafting would be effective. D.I. 1 ¶ 53. Dr. Zabel thought orthotics would be a more appropriate course of treatment. D.I. 1 ¶ 54. He also mentioned amputation as a treatment option. D.I. 1 ¶ 55. In January 2017, Cooke saw Dr. Zabel for a follow-up appointment. D.I. 1 ¶ 56. Dr. Zabel reviewed Cooke's medical history and again concluded that split-thickness grafting would not benefit Cooke. Dr. Zabel instead prescribed orthotic shoes and topical treatment with protective bandages. D.I. 1 ¶ 58.

Cooke alleges that the treatments prescribed by Dr. Zabel "provided no relief whatsoever" between the January 2017 appointment with Dr. Zabel and when Cooke filed his complaint in June 2017. D.I. 1 ¶59. Cooke, thus, asserts that Department of Corrections employees and officials at the JTVCC "have denied and/or delayed necessary medical treatment, including, but not limited to, the denial of Dr. Hopkins' [sic] recommendation that [Cooke] be treated with split-thickness skin grafts." D.I. 1 ¶64. The results of this alleged denial of care,

according to Cooke, are that he "remains confined to a wheelchair, his chronic foot wounds continue to deteriorate, and he continues to remain in constant pain throughout this [sic] lower body." D.I. 1 ¶66.

## II. LEGAL STANDARDS FOR MOTION TO DISMISS

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

## III. ANALYSIS

### A. Eighth Amendment Claim

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition of cruel and unusual punishment applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666–67 (1962). The Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976) "conclude[d] that deliberate indifference to serious medical needs of prisoners" is a kind of cruel and unusual punishment "proscribed by the Eighth Amendment." 429 U.S. 97, 104. That conclusion, however, does not dictate that "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To be deliberately indifferent, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Cooke alleges that Defendants violated the Eighth Amendment when they "delayed providing [Cooke] with necessary medical treatment" and "denied, and continue to deny, [him] necessary medical care[.]" D.I. 1 ¶ 72. These conclusory statements are simply not supported by the facts alleged.

In February 2016 Cooke was transported to see Dr. Jamie Hopkins of Delaware Podiatric Medicine at the Bayhealth Wound Care Center. D.I. 1 ¶ 32. At that visit, Dr. Hopkins examined Cooke and developed a treatment plan. D.I. 1 ¶¶ 34–37. In total, Dr. Hopkins saw Cooke thirteen times in nine months for issues related to his feet—an average of more than 1.5 visits to the podiatrist per month. D.I. 1, Ex. 1 ¶ 8. These visits included treatment in addition to examination. D.I. 1 ¶¶ 38–47. Prison officials then took Cooke to see a plastic surgeon, Dr. Zabel, not once but twice. D.I. 1 ¶¶ 52, 56. In total, between February 2016 and January 2017 Cooke saw a doctor about his feet 15 times. Defendants have neither delayed nor denied Cooke care for his feet.

Cooke also alleges that Dr. Zabel's "rejection of the split-thickness skin grafts advocated by Dr. Hopkins" constitutes an Eighth Amendment violation. D.I. 1 ¶66. As a matter of law this cannot be true: "[M]ere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation[.]" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (2017) (internal quotation marks and citation omitted); *see also White v. Napoleon*, 897 F.2d 103, 110 (1990) (It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims."). Dr. Zabel has prescribed for Cooke a variety of treatments, including orthotic shoes that replaced those confiscated in 2014. The treatments prescribed by Dr. Zabel are clearly not the

6

treatments Cooke desires. The prescribed treatments might be frustrating to Cooke. They might even be malpractice. But they are not an Eighth Amendment violation. *See Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation.").

### B. Article I, Section 11 of the Delaware Constitution Claim

Article I, Section 11 of the Delaware Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted; and in the construction of jails a proper regard shall be had to the health of prisoners." Del. Const. art. I, § 11. Defendants claim they cannot be liable under the Delaware Constitution for two reasons: There is no private right of action against state officials for violations of the Delaware Constitution and they are protected from liability by sovereign immunity.

Defendants argument that there is no private right of action against state officials for violations of the Delaware Constitution is articulated in a single paragraph in their opening brief. *See* D.I. 13 at 10. Although Cooke counters this argument in his brief in opposition, *see* D.I. 15 at 19, Defendants do not address the issue at all in their reply brief, *see* D.I. 17. "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir.

1997). Because Defendants have not given the Court the information it needs to resolve this issue, I will not grant their motion to dismiss on these grounds.

Nor will I grant their motion to dismiss based on their sovereign immunity defense. Defendants claim they are protected by sovereign immunity. Cooke argues that the state has waived sovereign immunity by enacting 18 Delaware Code § 6511, which provides that "[t]he defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program . . ." 18 Del. C. § 6511. Defendants have responded that "[t]he state is not insured and, therefore there has been no waiver of sovereign immunity[.]" D.I. 17 at 5. Defendants have also submitted an affidavit from Debra Lawhead to support this claim. D.I 17, Attachment.

Whether the state is insured is a factual dispute. When ruling on a motion to dismiss, the Court only looks to the facts alleged in a complaint. *Umland*, 542 F.3d at 64. Ms. Lawhead's affidavit is not a part of the complaint. Therefore, I ignore the affidavit's contents, conclude I cannot resolve this factual dispute based on the facts alleged in the complaint, and deny Defendants' motion to dismiss Count II.

## IV. CONCLUSION

For the reasons stated above, I will grant Defendants' motion to dismiss Count I and deny its motion to dismiss Count II.

The Court will enter an Order consistent with this Memorandum Opinion.